SETH E. PIERCE (SBN 186576)
   sep@msk.com
AARON M. WAIS (SBN 250671)
   amw@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiffs
American Bullion, Inc. and Lear Capital, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN BULLION, INC. AND LEAR CAPITAL, INC.<br><br>Plaintiffs,<br><br>v.<br><br>VINCENT CURTO, and Does 1-10, inclusive.<br><br>Defendants. | CASE NO. 2:15-cv-03391<br><br>**COMPLAINT FOR:**<br><br>**(1) FALSE OR MISLEADING ADVERTISING [15 U.S.C. § 1125(a)**<br><br>**(2) FALSE OR MISLEADING ADVERTISING [CAL. BUS. & PROF. CODE § 17500 *et seq*];**<br><br>**(3) UNFAIR COMPETITION [CAL. BUS. & PROF. CODE §17200 *et seq* AND COMMON LAW];**<br><br>**DEMAND FOR JURY TRIAL** |

Mitchell Silberberg & Knupp LLP

6810599.1

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs American Bullion, Inc. ("American Bullion") and Lear Capital, Inc. ("Lear") (collectively, "Plaintiffs"), by their attorneys, allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs and Regal Assets, LLC ("Regal"), among others, compete in selling precious metals to the public for investment or collecting purposes. Regal, Regal's owner/CEO Tyler Gallagher ("Gallagher") and Regal's owner/marketing director/marketing consultant Kelly Felix ("Felix"), under the guise of operating a legitimate affiliate marketing program, are saturating the internet with false and deceptive promotional websites, videos and other content, which employ a variety of unscrupulous tactics to divert business to Regal and away from Regal's competitors, including Plaintiffs. Regal's "affiliates" are compensated handsomely for participating in, facilitating, and furthering this deception.

2. Defendant Vincent Curto (aka Vinnie Curto) ("Defendant") is a Regal affiliate, recruits additional Regal affiliates, and is creating, directing, controlling, aiding and abetting, knowingly allowing and benefitting from his own false webcontent, as well as the false and deceptive webcontent of those affiliates who he recruits, who are his "sub-affiliates" and agents. Defendant's and his agents' false and deceptive webcontent is referred to collectively as the "Regal Sites."

3. Defendant is compensated by Regal for any qualified leads and sales that he and his sub-affiliate agents direct to Regal.

4. Defendant's and his sub-affiliates' Regal Sites portray themselves as neutral, independent websites operated by qualified professionals in the relevant fields of precious metals, investing, and retirement planning, who have exhaustively researched the market and competing sellers, before proceeding to "independently review" Regal and Plaintiffs (among others) and recommend Regal. But upon information and belief, the reality is far, far different. The sites are not independent of Regal, but are run by Defendant or his sub-affiliate agents with Defendant's assistance and under his direction for and on behalf of Regal in

exchange for compensation. And the "reviews" are biased; Plaintiffs, as well as Regal's other competitors, are denigrated, while Regal is lauded and recommended.

5. In furtherance of this deception, the Regal Sites use fake names, stock photos, and fabricated credentials to give the sites false credibility and an aura of independence. The Regal Sites, moreover, repeatedly mislead the public as to the source of their reviews and their independence by failing to disclose or not adequately disclosing the material relationship between Regal and Defendant or his sub-affiliate agents, before panning the competition and recommending Regal.

6. All of the foregoing is done in a transparent effort to promote and advertise Regal and disparage its competitors, including Plaintiffs, with the goal of harming the reputation and goodwill of Plaintiffs and diverting sales to Regal, thereby earning commissions for Defendant both through his own Regal Sites and through the Regal Sites of his sub-affiliate agents.

7. Defendant's actions are knowing, willful, and malicious. They have caused, and are continuing to cause, severe and irreparable damage to Plaintiffs. Accordingly, Plaintiffs are entitled to relief under the Lanham Act and California law, including injunctive relief, compensatory damages, disgorgement of unjust profits, treble damages, and attorney's fees and costs.

## JURISDICTION AND VENUE

8. This is an action arising in part under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and under California statutory and common law.

9. This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b) in that it involves an action arising under the Lanham Act, 15 U.S.C. §§ 1125(a) and 1114(a).

10. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

11. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over those claims of Plaintiffs that arise under the laws of the State of California because they are so related that they form part of the same case or controversy.

12. Defendant is subject to personal jurisdiction in the State of California because upon information and belief, the unlawful conduct complained of herein occurs in and causes injury in this judicial district; Defendant has directed his activities at American Bullion and Lear, both California Corporations, as well as California consumers; and upon information and belief, Defendant is the agent for and has transacted business and contracted with Regal, which itself is a California Corporation with its principal place of business in California.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in that the majority of parties, reside in this judicial district; a substantial part of the events giving rise to this Complaint occurred in this judicial district; upon information and belief, Defendant is an agent for Regal, which itself has its principal place of business in this judicial district; and Defendant does business in this judicial district.

## THE PARTIES

14. American Bullion is a California Corporation with its principal place of business in Los Angeles, California.

15. Lear is a California Corporation with its principal place of business in Los Angeles, California.

16. Plaintiffs are informed and believe, and on that basis aver, that at all times relevant herein, Defendant is and was an individual residing in Neptune, New Jersey and is an agent of Regal. In addition, Defendant is the owner and operator of several Regal Sites, all of which are substantially the same, including but not limited to:

- http://bestgoldiracompanies.org
- http://goldabree.com

- http://goldiraanalysis.com
- http://goldiracomparison.com
- http://goldirarollovers.com
- http://homefrontstudios.com
- http://realgoldira.com

17. Defendant solicits additional affiliates for Regal (Defendant's sub-affiliate agents) and either creates, aids or abets in the creation of or profits from the creation of additional Regal Sites operated by his sub-affiliate agents. Among other places, Curto has recruited additional affiliates through the website bringthefresh.com and through a YouTube video featured on his Google+ page titled "Vinnie Curto Coaching Program."

18. At all times herein mentioned Defendant was the agent, aider and abettor, and/or co-conspirator of Regal, Gallagher and Felix, was acting within the course and scope of said agency and/or in furtherance of such conspiracy, and aided and assisted Regal, Gallagher and Felix in committing the wrongful acts alleged herein, and is liable to Plaintiffs as alleged herein.

19. Indeed, upon information and belief, Curto is one of the top sales agents/affiliates for Regal and has made well over $100,000 in commissions, including as much as $45,500 in one month alone, through his false and his sub-affiliate/agents' deceptive Regal Sites (which roughly translates into $3,000,000 in sales).

20. At all times herein mentioned Defendant's sub-affiliate agents – whose names are currently unknown to Plaintiffs – were acting as the agents, aiders and abettors, and/or co-conspirators of Defendant and were acting within the course and scope of such agency and/or in furtherance of such conspiracy, and aided and assisted Defendant in committing the wrongful acts alleged herein, and Defendant is liable to Plaintiffs for their acts as alleged herein.

21. Plaintiffs are unaware of the true names or capacities of the defendants sued herein under the fictitious names Does 1 through 10, inclusive. Plaintiffs are informed and believe, and on that basis aver, that Does 1 through 10, and each of them, either directly performed the acts alleged herein or were acting as the agent, co-conspirator or representative of Defendant, or otherwise participated in the acts alleged herein with Defendant. Accordingly, defendants Does 1 through 10 are each liable for all of the acts alleged herein because they were the cause in fact and proximate cause of all injuries suffered by Plaintiffs as alleged herein. Plaintiffs will amend the Complaint to state the true names of defendants Does 1 through 10 when their identities are discovered.

## GENERAL ALLEGATIONS

### Plaintiffs' Businesses and Reputations

22. For years, American Bullion has assisted clients in purchasing gold or other precious metals for placement in individual retirement accounts or physical delivery.

23. American Bullion promotes itself nationally using the trade name American Bullion. American Bullion also promotes and offers its services, in part, through a website using the domain name www.americanbullion.com.

24. American Bullion generates business and promotes itself online, including through user-generated searches on search engines (e.g., users are directed to American Bullion's website as a result of online Google searches). American Bullion also relies on word-of-mouth, including reviews and recommendations on the internet, to generate business.

25. American Bullion has invested enormous time, effort, and resources advertising and promoting its high quality services under and in connection with the American Bullion trade name, and in encouraging satisfied customers to spread the word via online reviews.

26. Accordingly, online reviews and recommendations are extremely valuable to American Bullion, and crucial to the continued vitality and growth of American Bullion's business.

27. For years, Lear has likewise assisted clients in purchasing gold and other precious metals, in physical form, for retirement, investing or collecting purposes.

28. Lear promotes itself nationally using the trade name LEAR CAPITAL. While Lear has gained significant common law trademark and other rights in its LEAR CAPITAL mark through its continuous use, advertising and promotion of LEAR CAPITAL, Lear also has protected its valuable rights by filing for and obtaining a federal trademark registration for its LEAR CAPITAL mark.

29. Lear owns the trademark "LEAR CAPITAL®," which is registered on the Principal Register of the United States Patent and Trademark Office (Reg. No. 3696663) for "G&S: Gold, silver, platinum, palladium and numismatic coins and bars brokerage services, gold individual retirement accounts." The foregoing registration is valid, subsisting and exclusively owned by Lear.

30. Lear has invested enormous time, effort, and resources advertising and promoting its high quality services under and in connection with its LEAR CAPITAL® mark. This includes investing enormous time, effort and resources promoting and offering its services online. To this end, Lear promotes and offers its services through a website using the domain name www.learcapital.com. It also promotes and offers its services through various online advertisements, including but not limited to placing video advertisements on various websites, including YouTube.com.

31. Lear generates a significant portion of its business as a result of user-initiated online searches (e.g., users are directed to Lear's website as a result of online Google searches).

32. Lear also relies on word-of-mouth, including reviews and recommendations on the internet, to generate business. Indeed, Lear encourages satisfied customers to spread the word via online reviews. Accordingly, online reviews and recommendations are extremely valuable to Lear, and crucial to the continued vitality and growth of Lear's business.

## Defendant's Unfair and Unlawful Conduct

### A. Defendant's Participation in Regal's Affiliate Program

33. Affiliate marketing is a type of performance-based marketing in which a business pays compensation to affiliates (whether individuals or companies) for referred business. In short, the affiliates promote the business, including through separate websites, and are compensated for each visitor or customer brought to the business by the affiliate's marketing efforts. Marketing efforts vary from placing banners and ads for the business on the affiliated website to the affiliate recommending or positively reviewing the business.

34. Regal is also in the business of selling precious metals, in physical form, for placement in customer investment accounts or for collecting purposes.

35. Like Plaintiffs, Regal promotes itself online and generates business through results yielded by online search engines in response to queries from potential clients looking for precious metal services.

36. Unlike Plaintiffs, however, Regal, Gallagher and Felix have created and are operating a false and misleading so-called affiliate program for the purpose of falsely promoting Regal and disparaging Plaintiffs (among other competitors).

37. Defendant is one such sales agent (affiliate) of Regal. Defendant's involvement in this scam is clear. As discussed herein, Defendant owns and operates his own false and deceptive Regal Sites and is compensated for qualified leads and sales directed to Regal through those Regal Sites.

38. Defendant also recruits additional affiliates (Defendant's sub-affiliate agents) to Regal's affiliate program. Defendant's sub-affiliate agents own and

operate additional false and deceptive Regal Sites. Defendant provides certain false and deceptive content to his sub-affiliate agents and otherwise aids and abets them in the creation and operation of their fraudulent Regal Sites. Finally, Defendant is compensated for qualified leads and sales directed to Regal through his sub-affiliate agents' Regal Sites.

39. The Regal Sites are false and deceptive because, among other things, they falsely portray themselves as independent review sites and contain false content, such as names, photographs and narratives, for the purposes of establishing trust with consumers so that consumers will follow their reviews of Plaintiffs and Regal and their ultimate recommendation of Regal.

### 1. The Regal Sites are not in any sense independent.

40. The Regal Sites portray themselves as neutral, independent websites operated by qualified professionals in the relevant fields of precious metals, investing, and retirement planning, who have thoroughly researched the market and available sellers, before proceeding to "independently review" Regal and Plaintiffs (among others). But the reality is far, far different. The sites are not independent. Defendant and his sub-affiliates are compensated for each potential customer they re-direct to Regal, and Defendant and his sub-affiliates craft and post intentionally biased reviews – lauding Regal and denigrating Plaintiffs and other competitors – as well as other fraudulent material, for the purpose of increasing the compensation they will receive from Regal.

41. Moreover, the material financial relationship between Defendant and Regal is not adequately disclosed, if it is disclosed at all, on Defendant's Regal Sites.

42. In other instances, upon information and belief, other Regal Sites are owned independently of Defendant but were in fact created by Defendant or with his help and are operated by sub-affiliates recruited by Defendant. Moreover, upon information and belief, Defendant receives compensation from Regal for any

qualified leads or business that is directed to Regal by these other sites because he recruited the affiliates for Regal – a classic pyramid scheme. The owners and operators of these sites, in turn, are compensated by Regal for promoting it and directing customers to it. The material financial relationship between Regal and these agents is not adequately disclosed, if it is disclosed at all.

43. Finally, in other instances, the Regal Sites are owned independently of Defendant and include fraudulent or misleading content created independently of Defendant but the operators of such Regal Sites were nevertheless recruited by and assisted by Defendant in setting up such fraudulent Regal Sites. Upon information and belief, Defendant is compensated by Regal for any qualified leads or business that is directed to Regal by these other fraudulent Regal Sites because Defendant recruited the affiliates for Regal. The owners and operators of these sites, in turn, are compensated by Regal for promoting it and directing customers to it. The material financial relationship between Regal and these agents is not adequately disclosed, if it is disclosed at all.

44. In other words, while Defendant's and his sub-affiliates' Regal Sites represent themselves to the public and potential clients as independent websites, they are in fact direct advertisements being made by agents of Regal in an effort to drive traffic and clients to Regal and directly benefit Defendant in doing so.

**2. The Regal Sites contain false content.**

45. The Regal Sites use false content to make the Sites appear sophisticated and trustworthy, thereby fraudulently convincing consumers to use Regal and not any of Plaintiffs. This includes, but is not limited to, the use of false identities, fake photographs, false credentials and misstating the source of certain statements (which themselves are false).

46. Defendant uses or, alternatively, supplies or directs his agents to use similar false content in an effort to gain the trust of consumers and thereby fraudulently convince consumers to use Regal and not Plaintiffs.

### 3. Defendant's and his agents' Regal Sites

47. Upon information and belief, since at least 2013, Defendant has owned and operated several Regal Sites, which are illustrative of the issues above.

48. Each affiliate receives a unique identification number and a dedicated toll-free phone number for purposes of tracking leads to Regal and paying commissions. Upon information and belief, Curto has received at least two affiliate numbers from Regal – 1600 and 3011 – and has received the dedicated toll-free number 1-888-981-7445. Upon information and belief, all Regal Sites that are connected to these affiliate numbers and phone number are either owned and operated by Defendant or are owned and operated by his sub-affiliate agents.

49. While Plaintiffs are currently unaware of every Regal Site that is owned and operated by Defendant and his agents (said information being within the exclusive control of Defendant and Regal), Plaintiffs are aware of the following Regal Sites that are owned and operated by Defendant.

#### a. goldabree.com

50. Defendant owns and operates goldabree.com, which upon information and belief was launched in or about December 2013. This website is a Regal Site, wherein Defendant misstates the nature of the website and his purpose in operating the website before lauding and recommending Regal

51. For example, as of May 3, 2014, goldabree.com stated that it had been created by "Anthony Meanors" and included pictures of "Anthony Meanors" as seen in **Exhibit 1**. "Anthony" states:

> "I love helping people improve their financial situation. I hope that you find here information that will change and enrich your life! Feel free to leave comments, recommend my articles to other people and like this site on social networks. Thanks a lot and take care!"

**Exhibit 1**.

This paragraph ends with a link to Anthony Meanors' purported Google+ page. The Google+ page, one of several fake social media accounts also created by Defendant, includes the same stock photo of "Anthony" featured on goldabree.com, which depicts "Anthony" as a middle-aged man with graying hair. *See* **Exhibit 2**. Plaintiffs later discovered that this photograph of "Anthony" is actually a stock photo, available for purchase online. *See* **Exhibit 3**. According to his Google+ profile, "Anthony" attended New York University and lives in New York. "Anthony's" Google+ page also features countless posts suggesting that viewers visit goldabree.com to read Defendant's reviews. *See* **Exhibit 2**.

52. However, "Anthony Meanors" is actually Defendant, a young man who graduated from Lehigh University in 2002 and who now lives in Neptune, New Jersey (*see* **Exhibit 4**); *a fortiori*, the preceding narrative and photographs are false.

53. In addition, Goldabree.com purported to post independent analysis and reviews of several precious metal companies, including Regal, American Bullion, and Lear, in which Defendant invariably lauds Regal – i.e., Regal is "held in high regard," "renowned for their professional representatives," "widely respected," "has become a much trusted name inextricably linked with Gold investment," and that Regal's "free Gold IRA rollover kit [] should be the first step in anyone's investment journey" – while minimizing Plaintiffs. *See* **Exhibit 1**.

54. Of course, these reviews and recommendations were not independent, but were designed to promote Regal and drive traffic and sales to it, pursuant to which Defendant would earn commissions.

55. Goldabree.com, however, did not disclose at all Defendant's material financial relationship with Regal. By falsely representing himself to be "Anthony Meanors" without disclosing that he is in fact being paid to recommend Regal, Defendant is disseminating deceptive reviews and recommendations of Regal without adequate disclosure.

56. Defendant's other websites offer similarly false narratives and post similarly biased and deceptive reviews of Plaintiffs and Regal, without adequately disclosing Defendant's financial connection to Regal, Gallagher and Felix.

## Plaintiffs Have Been Harmed And Continue To Be Harmed By Regal Assets' Wrongdoing.

57. Defendant's direct involvement and liability is clear: (a) he is an affiliate and owns and operates his own false and deceptive Regal Sites and (b) he controls, provides content to, directs, aids and abets and profits from other Regal Sites that are operated by his sub-affiliate agents.

58. Defendant is also an agent of Regal, Gallagher and Felix in that they manifest control over Defendant, including through the exclusive nature of their relationship; the terms of Regal's affiliate agreement (which Regal states it requires each affiliate to sign); Regal's payment of commissions; Regal's control and provision of content; Regal's right to retain or recoup commissions for violations of the affiliate agreement; the transfer of IP to Regal; the right to terminate Defendant's participation in the program at will; and the right to alter the terms of the parties' affiliate agreement at will.  Upon information and belief, Defendant also purports to monitor Defendant's conduct to supposedly enforce compliance with Regal's affiliate agreement and prevent deceptive advertising.

59. Defendant's sub-affiliate agents, in turn, are Defendant's agents for the reasons, among others, that Defendant controls these affiliates and the content of their websites, is compensated by Regal for their qualified leads and referrals of business to Regal and provides these sub-affiliates with guidance and content for their websites.

60. In addition, to the extent that Defendant contends he is not knowledgeable of his agents' wrongful conduct, it is only because of willful blindness.

61. Finally, Defendant has also ratified the misconduct of his agents, including but not limited to by accepting the benefits of his agents' misconduct in the form of paid commissions from Regal.

62. Regardless, Plaintiffs are informed and believe, and on that basis allege, that Defendant's and his agents' wrongful conduct as described herein have generated hundreds of thousands, if not millions of dollars of sales for Regal and in turn, hundreds of thousands, if not millions of dollars of commissions for Defendant and his sub-affiliates.

63. The Regal Sites and Defendant's and his agents' other wrongful conduct have caused and are continuing to cause Plaintiffs to individually and collectively lose market share and significant business revenue and profits, and have caused and are continuing to cause irreparable harm to each of Plaintiffs' reputation and goodwill.

## FIRST CLAIM FOR RELIEF

[False or Misleading Advertising – 15 U.S.C. § 1125(a)]

[By All Plaintiffs Against Defendant and DOES 1-10]

64. Plaintiffs reallege each and every allegation set forth in Paragraphs 1 through 63, inclusive, and incorporate them by reference herein.

65. Defendant is a member of Regal's affiliate program and, in that capacity, has created and is operating certain Regal Sites that purport to present independent consumer reviews and recommendations but, in reality, are transparently designed to promote Regal and disparage Plaintiffs (among other competitors) in order to mislead the public and divert potential clients from Plaintiffs to Regal.

66. Defendant also recruits additional affiliates on behalf of Regal and these additional affiliates are his sub-affiliate agents, including but not limited to those agents whose names are unknown and thus are sued as Does 1-10. Defendant's agents have also created and are operating certain Regal Sites that

purport to present independent consumer reviews and recommendations but, in reality, are transparently designed to promote Regal and disparage Plaintiffs (among other competitors) in order to mislead the public and divert potential clients from Plaintiffs to Regal.

67. In furtherance of this goal, the Regal Sites are rife with false content, including content that is literally false, or if not literally false then misleading, and fail to disclose their connection to Regal, all in a manner that is likely to deceive or confuse customers or prospective customers regarding the nature, characteristics, or quality of the services offered by Plaintiffs and Regal.

68. Defendant has made these false and misleading statements in the course of advertising Regal's services and denigrating Plaintiffs' services.

69. In addition, Defendant's agents, including but not limited to Does 1-10, have made these false and misleading statements in the course of advertising Regal's services and denigrating Plaintiffs' services for which Defendant is directly and vicariously liable.

70. These statements have or are likely to mislead or confuse consumers as to the quality of each of Plaintiffs' services and goods and Regal's services and goods and otherwise mislead the public and divert business from Plaintiffs to Regal.

71. Plaintiffs individually and collectively have already been, and are likely to be further injured as a result of the foregoing false statements, by a direct diversion of market share and sales to Regal, in an amount to be determined at trial, and by a lessening of each of Plaintiffs' good will and reputation, in an amount to be determined at trial.

72. Defendant is compensated for any qualified leads and business that he directs to Regal as a result of the foregoing false and deceptive advertising. Defendant is also compensated for any qualified leads and business that his sub-affiliate agents direct to Regal as a result of their false and deceptive advertising.

Defendant's sub-affiliate agents, including but not limited to Does 1-10, also are compensated for any qualified leads and sales that they direct to Regal as a result of their false and deceptive advertising. Plaintiffs are each entitled to their respective share of any and all profits earned by Defendant or his agents, including but not limited to Does 1-10, by reason of the unlawful acts complained of herein as provided by law.

73. Moreover, unless enjoined, Defendant's and his agents' actions will continue to cause irreparable injury to Plaintiffs. Accordingly, Plaintiffs are each entitled to equitable and injunctive relief.

74. Because this is an exceptional case involving calculated and willful misconduct by Defendant and his agents, including but not limited to Does 1-10, Plaintiffs are each entitled to recover treble damages, treble profits, and attorneys' fees under 15 U.S.C. § 1117(a).

### SECOND CLAIM FOR RELIEF

[False or Misleading Advertising –Cal. Bus. & Prof. Code § 17500 *et seq.*]

[By All Plaintiffs Against Defendants and DOES 1-10]

75. Plaintiffs reallege each and every allegation set forth in Paragraphs 1 through 74, inclusive, and incorporate them by reference herein.

76. Defendant is a member of Regal's affiliate program and, in that capacity, has created and is operating certain Regal Sites that purport to present independent consumer reviews and recommendations but, in reality, are transparently designed to promote Regal and disparage Plaintiffs (among other competitors) in order to mislead the public and divert potential clients from Plaintiffs to Regal.

77. Defendant also recruits additional affiliates on behalf of Regal and these additional affiliates are his sub-affiliate agents, including but not limited to Does 1-10. Defendant's agents have also created and are operating certain Regal Sites that purport to present independent consumer reviews and recommendations

but, in reality, are transparently designed to promote Regal and disparage Plaintiffs (among other competitors) in order to mislead the public and divert potential clients from Plaintiffs to Regal.

78. In furtherance of this goal, the Regal Sites are rife with false content, including content that is literally false, or if not literally false then misleading, and fail to adequately disclose their connection to Regal, all in a manner that is likely to deceive or confuse customers or prospective customers regarding the nature, characteristics, or quality of the services offered by Plaintiffs and Regal.

79. Defendant made these false and deceptive statements in the course of advertising Regal's services and denigrating Plaintiffs' services.

80. In addition, Defendant's agents, including but not limited to Does 1-10, made these false and deceptive statements in the course of advertising Regal's services and denigrating Plaintiffs' services.

81. Past and prospective customers were or are likely to be deceived by these statements, as they will likely consider the statements made about each of Plaintiffs to be negative and the statements about Regal to be positive, and the statements made are likely to influence the consumer's decision as to whether to use each of Plaintiffs' services or Regal's services.

82. Plaintiffs are each entitled to restitution pursuant to California's unfair competition statute, Cal. Bus. & Prof. Code § 17200 *et seq*. Plaintiffs are not seeking damages at law pursuant to this statutory claim.

83. Unless enjoined, Defendant's and his agents' (including but not limited to Does 1-10) actions will continue to cause irreparable injury to Plaintiffs. Accordingly, Plaintiffs are each entitled to equitable relief. Thus, Plaintiffs are each entitled to preliminary and permanent injunctive relief pursuant to Cal. Bus. & Prof. Code § 17203.

## THIRD CLAIM FOR RELIEF

[Unfair, Unlawful, or Fraudulent Business Acts –

Cal. Bus. & Prof. Code § 17200 et seq. and Common Law]

[By All Plaintiffs Against Defendant and DOES 1-10]

84. Plaintiffs reallege each and every allegation set forth in Paragraphs 1 through 83, inclusive, and incorporate them by reference herein.

85. Based on the acts described herein – including but not limited to Defendant's and his agents' creation and operation of Regal Sites that purport to present independent consumer reviews but, in reality, are transparently designed to promote Regal and disparage each of Plaintiffs (among other competitors) and in this way mislead the public and divert potential clients from each of Plaintiffs to Regal – Defendant and his sub-affiliate agents, including but not limited to Does 1-10, have committed unfair, unlawful, and/or fraudulent business acts and practices in violation of California Business and Professions Code § 17200 *et seq* and California common law.

86. As a result of Defendant's and his agents' aforesaid conduct, Plaintiffs have suffered substantial damage and irreparable harm constituting an injury for which Plaintiffs have no adequate remedy at law.  Unless this Court enjoins Defendant's and his agents' (including but not limited to Does 1-10) conduct, each of Plaintiffs will continue to suffer irreparable harm.  Each of Plaintiffs also has suffered loss of profits and other damages as a result of Defendant's and his agents' (including but not limited to Does 1-10) aforesaid conduct.

87. Plaintiffs are each entitled to preliminary and permanent injunctive relief pursuant to Cal. Bus. & Prof. Code § 17203.

88. Plaintiffs are each entitled to damages pursuant to California common law.

89. Plaintiffs are each entitled to restitution pursuant to California's unfair competition statute, Cal. Bus. & Prof. Code Code § 17200 *et seq*. Plaintiffs are not seeking damages at law pursuant to this statutory claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests judgment against Defendant and Does 1-10 as follows:

1. Permanent mandatory and prohibitory injunctive relief designed to stop the foregoing wrongful conduct;

2. Awarding restitution to each Plaintiff in an amount to be proven at trial;

3. Awarding to each Plaintiff its actual damages in an amount to be proven at trial;

4. Awarding to each Plaintiff its share of any and all profits earned by Defendant and Does 1-10 by reason of the unlawful acts complained of herein as provided by law;

5. Awarding to each Plaintiff exemplary damages, including punitive and treble damages and treble profits for Defendant's and Does 1-10's willful and malicious behavior and as provided by law;

6. Awarding to each Plaintiff its reasonable attorneys' fees, pre-judgment and post-judgment interest, and costs of suit as provided by law; and

7. Granting other relief as may be properly sought or the Court may deem just and proper.

DATED: May 6, 2015    MITCHELL SILBERBERG & KNUPP LLP

By: /s/Aaron M. Wais
    Aaron M. Wais (SBN 250671)
    Attorneys for Plaintiffs
    American Bullion, Inc. & Lear Capital, Inc.

# DEMAND FOR JURY TRIAL

American Bullion and Lear each individually and collectively demand a trial by jury of all issues triable of right by jury.

DATED: May 6, 2015              MITCHELL SILBERBERG & KNUPP LLP

By: /s/Aaron M. Wais
Aaron M. Wais (SBN 250671)
Attorneys for Plaintiffs
American Bullion, Inc. & Lear Capital, Inc.